IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT RUSSELL SPENCE, JR., | ) | |
| | ) | Civil Action No. 2:12-cv-1077 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge David Stewart Cercone |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| LOUIS CAPUTO, ESQ., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | ECF No. 11 |
| | ) | |

## REPORT AND RECOMMENDATION

## I.      RECOMMENDATION

It is respectfully recommended that Plaintiff's Complaint, which was commenced *in forma pauperis*, be dismissed with prejudice under 28 U.S.C. §1915(e)(2)(B), as frivolous and for failure to state a claim upon which relief may be granted. Accordingly, it is further recommended that Plaintiff's Motion for Service by U.S. Marshal of the Complaint (ECF No. 11) be denied as moot.

## II.     REPORT

Plaintiff, Robert Russell Spence, was incarcerated at the time he commenced this action on July 31, 2012, and has remained incarcerated through the present time.[1] Subsequently, Plaintiff filed a motion to proceed *in forma pauperis* on August 16, 2012, which was initially denied for failing to attach a certified account statement for the six months preceding the filing of

---

[1] At the time he commenced this civil action, Plaintiff was incarcerated at the Beaver County Jail.  He has since been moved to and is currently housed at the Northeast Ohio Correctional Center.

the Complaint, but subsequently granted on September 20, 2012, at which time the Clerk of Court docketed the Complaint (ECF No. 9).

Plaintiff has filed a 124-page, 468-paragraph, Complaint against thirty-six (36) Defendants, which he alleges is authorized by 42 U.S.C. §§1981, 1982 (property rights of citizens), 1983 (to redress the deprivation under color of state law), 1985 and 2000c-5 (of rights secured by the U.S. Constitution). Plaintiff attempts to set forth numerous legal claims under the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution, and various identified and unidentified state and federal laws (Compl. at ¶¶284-441). In his prayer for relief, Spence seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.* at. ¶¶442-468.)

## A. LEGAL STANDARDS

Plaintiff is proceeding *pro se* and as such, he is entitled to liberal construction of his submissions in federal court. This means that the Court must liberally construe the factual allegations of the complaint because *pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, the court should "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins*, 293 F.3d at 688). However, *pro se* litigants are not free to

ignore the Federal Rules of Civil Procedure. *Pruden v. Long*, Civ. A. No. 3:CV-06-2007, 2006 WL 3325439, *1 (M.D.Pa. Oct. 24, 2006).

Pursuant to 28 U.S.C. §1915(a), Plaintiff requested and has been granted leave to proceed *in forma pauperis*. Thus, his allegations must be reviewed in accordance with the directives provided in 28 U.S.C. §1915(e)(2). Section 1915(e)(2), as amended, requires the federal courts to review complaints filed by persons who are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B). "[A] complaint…is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hawkins v. Coleman Hall, C.C.F.*, No. 11-3467, 2011 WL 5970977, at *2 (3d Cir. Nov. 30, 2011) ("An appeal is frivolous when it lacks an arguable basis either in law or fact." (citing *Neitzke*, *supra*). Thus, under §1915(e)(2)(B), courts are "authorized to dismiss a claim as frivolous where 'it is based on an indisputable meritless legal theory or where the factual contentions are clearly baseless.'" *O'Neal v. Remus*, No. 09-14661, 2010 WL 1463011, at *1 (E.D.Mich. Mar. 17, 2010) (quoting *Price v. Heyrman*, No. 06-C-632, 2007 WL 188971, at *1 (E.D.Wis. Jan. 22, 2007) (citing *Neitzke*, 490 U.S. at 327)).

Dismissal of the complaint as malicious under Section 1915(e)(2)(B)(i) is warranted where after examining the litigant's subjective motivation for filing the lawsuit, the court determines that the action is an attempt to vex, injure or harass the defendant. *Daley v. U.S. Attorneys Office,* 538 F. App'x 142, 143-44 (3d Cir. 2013) (citing *Deutsch v. United States,* 67 F.3d 1080, 1086 (3d Cir. 1995)). Some courts have recognized more objective instances of malicious claims, for example, where the complaint "duplicates allegations of another [ ] federal lawsuit by the same plaintiff", *Daley v. U.S. Dist. Court Dist. of Del.,* 629 F.Supp. 2d 357, 359-

60 (D. Del. 2009) (citations and internal quotation marks omitted), *aff'd* 383 F. App'x 178 (3d

Cir. 2010), or where the complaint "is plainly abusive of the judicial process", *Abdul-Akbar v.*

*Dep't of Corrections,* 910 F.Supp. 986, 999 (D. Del. 1995) (citations omitted), *aff'd* 111 F.3d

125 (3d Cir. 1997).

In determining whether a claim fails to state a claim upon which relief may be granted for

purposes of Section 1915(e)(2)(B), courts apply the same  standard applied to motions to dismiss

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *D'Agostino v. CECOM RDEC*, 436

F. App'x 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir.

1999)).  A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*,

355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The court of appeals has expounded on this

standard in light of its decision in *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)

(construing *Twombly* in a civil rights context), and the Supreme Court's decision in *Iqbal*:

> After *Iqbal*, it is clear that conclusory or "bare-bones" allegations
> will no longer survive a motion to dismiss: "threadbare recitals of
> the elements of a cause of action, supported by mere conclusory
> statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent
> dismissal, all civil complaints must now set out "sufficient factual
> matter" to show that the claim is facially plausible. This then
> "allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." *Id.* at 1948. The
> Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must
> show that the allegations of his or her complaints are plausible. *See*
> *Id*. at 1949-50; *see also Twombly*, 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In making this determination, the court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). "To the extent that a complaint filed *in forma pauperis* which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and §1915([e]) both counsel dismissal." *Neitzke*, 490 U.S. at 328 (footnote omitted).

## B. PLAINTIFF'S CLAIMS

A review of the 124-page, 468-paragraph Complaint reveals that Plaintiff is suing three categories of defendants: (1) individuals and businesses with whom he had business relationships and/or conducted business transactions;[2] (2) counsel who were retained by him at various times on civil and criminal matters;[3] and (3) Washington County, a local government entity.

### 1. The Business Defendants

Plaintiff contends that he was the owner of several legitimate businesses—Angel's Night Club/Southside Fountain Room,[4] Highest Galaxy, and Real Estate 75—and the Business

---

[2] The named Defendants in the first category are Jickie Hayes, Michael Harris, Keith Hart, Michael Hill, Rashene Hill, Earl B. Lamar, Vincent Locastro, Michael Issac, Doug Meyers, John R. Lee, International Investigative Services, Cortorra Brownfeild, Ryan Eichhorn, A. L. J. Haifa Corporation, Denise Haenze, Brian Haenze, Angel's Night Club, David Ellis, The Auto Gallery, Real Estate 75, Auto Effects, All Pro Auto Mall, and Mathew Green (collectively, the "Business Defendants").

[3] The attorneys named as Defendants in this lawsuit are Louis Caputo, William Difenderfer, Mark D. Lancaster, Sally Frick, George Bills, Hagen Starz, Douglas Sughrue, Kennith J. Haber (sic), James Wymard, James Love, and Stanton Levenson (collectively, the "Attorney Defendants").

[4] Plaintiff uses the names "Angel's Night Club" and the "Southside Fountain Room" interchangeably throughout the Complaint. It appears that after Plaintiff purchased Angel's Night Club, he renamed it the "Southside Fountain Room."

Defendants were either conducting illegal activities and trying to shift the blame to Plaintiff, who was operating legitimate businesses, or they were attempting to scam Plaintiff in their business deals with him and stole his property. Consequently, through their lies to the "authorities", Plaintiff, who is African American, was indicted,[5] while the real perpetrators—the Business Defendants, some of whom are Caucasian, were not indicted. These business arrangements/transactions allegedly took place at various times beginning in January 2007 through sometime in 2012, as described in more detail below.

### a. David Ellis, Jickie Hayes, Michael Harris & Keith Hart

Plaintiff hired David Ellis, a freelance photographer known as the "Pittsburgh Popparazzi," in 2005 to take photographs of a bar in Homestead, PA. (*Id.* at ¶225.) From 2005 to 2007, Plaintiff used Ellis to photograph all of the events that Plaintiff was involved with in the Pittsburgh area and in Ohio. (*Id.* at ¶¶ 226-229.) Beginning in 2007, Ellis began a secret relationship with Jickie Hayes, who was portraying a night club promoter for various clubs in the Cleveland, Ohio area, despite Plaintiff's warning to Ellis not to get involved with Hayes, who was really a drug dealer. (*Id.* at ¶¶ 231-33, 240, 251.)

In early 2007, Plaintiff was considering the purchase of a night club and paid Ellis to take hundreds of photos of Angel's Night Club for evaluation purposes. (*Id.* at ¶234.) Plaintiff asked Ellis not disclose any of his business dealings to anyone, but Ellis was secretly disclosing

---

[5] A review of the public court docket in the U.S. District Court for the Western District of Pennsylvania reveals that Plaintiff was arrested on or about April 5, 2012 on a second superseding indictment filed in this District in Criminal Case No. 2:09-cr-105. Plaintiff was charged with the felony offenses of conspiracy to possess with intent to distribute 5 kg or more of cocaine, conspiracy to engage in money laundering, and possession with intent to distribute 5 kg or more of cocaine. On June 26, 2014, the jury in Plaintiff's criminal trial returned a guilty verdict on the first two counts, but was deadlocked on the third one and the court declared a mistrial on the government's motion to dismiss that count. (Case No. 2:09-cr-105, ECF Nos. 2249, 2273, 2278.) Plaintiff is currently awaiting sentencing on the jury's verdict, which is set for January 9, 2015. (*Id.* at ECF No. 2279.)

Plaintiff's sensitive information to Hayes and others, in violation of Pennsylvania state law and his rights under the Sixth Amendment. (*Id.* ¶¶234, 392-93.) Also, sometime in 2007 during a 5-day event in Miami, Ellis failed to carry out the photography duties he was hired by Plaintiff to perform (for $20,000) and he broke two $2,000 cameras purchased by Plaintiff specifically for that event, which caused Plaintiff to lose $100,000 on the event. (*Id.* at ¶¶ 235-39.) Ellis was also working for Hayes in the Cleveland area but lied to Plaintiff as to what he was actually doing in Cleveland. (*Id.* at ¶240.) During the fourth quarter of 2007, Plaintiff terminated Ellis for sharing misleading information about Plaintiff to persons who were con-artists. (*Id.* at ¶¶ 242, 244.)

In 2008, after Ellis was terminated, Hayes kept trying to infiltrate Plaintiff's business and Pittsburgh night club scene, showing up frequently at Plaintiff's house to report what Ellis and others were saying about Plaintiff. (*Id.* at ¶¶ 246-48.) In October or November of 2008, Hayes was arrested and charged with possession and intent to deliver heroin in Cleveland, Ohio. Hayes was set up by his own friend from Cleveland, Keith Hart,[6] who was also dealing drugs. (*Id.* at ¶¶250-52.)

Hayes, Michael Harris, and Keith Hart did not want to be held accountable for their actions and shifted blame to others, to avoid going to jail. (*Id.* at ¶¶252, 254, 256.) Plaintiff alleges that Hayes, Harris and Hart stole over $100,000 from him with vehicles still in their possession, in violation of state laws. (*Id.* at ¶405.) In addition, Harris, Hayes and Hart allegedly kept a known drug dealer (Tomika Turner) around them knowing she was associated with Plaintiff to create a perception for the authorities, thus violating Plaintiff's civil and constitutional rights. (*Id.* at ¶411.)

---

[6] Plaintiff appears to be unsure if Keith's last name is Hart or Harp, and includes both in the Complaint. (Compl., ¶250.) For ease of reference, the Court will refer to him as "Keith Hart."

As a result of Hayes' and Harris' actions, Plaintiff claims Pennsylvania state laws were violated causing him physical injuries. (*Id.* at ¶377, 389.) Plaintiff further contends that Hayes and Michael Harris gave false statements to and misled the authorities, violating Pennsylvania state laws and his rights under the Fifth and Fourteenth Amendments. (*Id.* at ¶¶378-80, 386-88.)

In March of 2009, Plaintiff again hired Ellis as a freelance photographer for several private jet trips financed by Brian Haenze, during which Ellis took 50 hours of footage[7] and over 10,000 photos at various events, all belonging to Plaintiff but held by Ellis, in violation of Plaintiff's rights under the Fourth Amendment. (*Id.* at ¶¶259, 394.) Plaintiff suffered another financial set back when Ellis wrecked one of Plaintiff's vehicles in November of 2009 and left the scene of the accident requiring Plaintiff to pay out of pocket to get the vehicle fixed. (*Id.* at ¶¶260-61.) Plaintiff further contends that Ellis gave up Plaintiff's evidence without any search warrants, in violation of his rights under the Fourth Amendment. (*Id.* at ¶383.)

### b. Angel's Night Club, Louis Caputo, Michael Issac, Matthew Green & A.L.J. Haifa Corp.

The events pertaining to Plaintiff's purchase and operation of Angel's Night Club occurred between January 2007 and March of 2008. (Compl. ¶¶ 46-59, 64-100, 133-35.) In January of 2007, Plaintiff was interested in buying Angel's Night Club ("Angel's") from Michael Issac, who was the President of ALJ Haifa Corporation "ALJ Haifa"). (*Id.* at ¶¶17, 46-49; Lease Agrmt. attached to Compl., ECF No. 9-2 at 13.) ALJ Haifa formerly operated a restaurant/bar business (Angel's) on Josephine Street in the South Side neighborhood of Pittsburgh, and owned a number of assets in connection with that business, including a restaurant liquor license issued by the Pennsylvania Liquor Control Board. (Asset Purchase Agrmt.

---

[7] In paragraph 259 of the Complaint, Plaintiff alleges that Ellis shot over 50 hours of footage, but in paragraph 394, Plaintiff alleges that Ellis withheld over 100 hours of footage.

attached to Compl., ECF No. 9-2 at 14.) Issac had his attorney, Louis Caputo, draft an agreement for the sale of ALJ Haifa's assets, including the liquor license, to Corey Entertainment, Inc.[8] (*Id.*, ECF No. 9-2 at 14-32.)

Plaintiff contends that Issac, ALJ Haifa, and Caputo made false reports as to furniture and equipment being worth $170,000 when Plaintiff had receipts for what he had to purchase, violating federal and state laws. (Compl., ¶424.) Plaintiff further contends that Issac and Caputo continuously misrepresented the value of the business, and Caputo allegedly prepared fictitious financial records as to how Issac was actually paid, and they conned him into entering the agreement. (*Id.* at ¶¶52, 55, 413.) As a result, in April 2007, Plaintiff invested cash and equipment of $240,000 in Angel's. (*Id.* at ¶¶56-57.) However, Plaintiff did not realize the profits he projected because Issac had misrepresented information about the club to him and Issac and his daughter were stealing cash from the club, violating his rights under the Fourth Amendment. (*Id.* at ¶¶66-68, 360.) Plaintiff contends that by holding onto his money and assets for over five years, Issac caused serious strain financially and personally on his life, in violation of federal and state laws. (*Id.* at ¶420.) Plaintiff further contends that Issac broke (1) a legally binding contract in violation of federal and state laws (*id.* at ¶361), and (2) many common laws causing physical injuries (*id.* at ¶362). In addition, Plaintiff contends that the Angels Night Club stole over $400,000 from him, violating the Fourth Amendment. (*Id.* at ¶363.)

As to Attorney Caputo, Plaintiff contends that he did not provide him with a copy of the "operating agreement"[9] between Corey Entertainment and ALJ Haifa until May 11, 2012,

---

[8] It is unclear what Plaintiff's relationship is to Corey Entertainment, as the documents attached to the Complaint indicate that the President of that company is Lloydrea Ritter. (Lease Agrmt. at 10, ECF No. 9-2 at 12; Stock Certificate of Corey Entertainment, Inc. attached to Compl., ECF No. 9-2 at 33.)

thereby violating state and federal laws. (*Id.* at ¶414.) Plaintiff further contends that through 2008, Caputo "very eagerly" attempted to have Plaintiff "retain his office" for possible federal charges, knowing he had no experience with federal law, in violation of Plaintiff's civil rights. (*Id.* at 415.) As of March 2008, Plaintiff alleges that Caputo was in constant contact with Vincent Locastro about Plaintiff's legal business dealings despite knowing that civil and criminal issues existed with regard to Locastro, which he refused to pursue, thus violating Plaintiff's due process rights, and federal and state laws. (*Id.* at 416.) Plaintiff further contends that Attorney Caputo "seize[d] plaintiff money for public use which violates fourth amendment" (*id.* at ¶350), "gave false information to seize plaintiff which violates fourth amendment" (*id.* at ¶349), "made false statements to cover his illegal actions" which violates the Fifth, Eighth, and Fourteenth Amendments and Pennsylvania state laws (*id.* at ¶¶ 351-54), "broke a legally binding contract which violates federal and state laws" (*id.* at ¶355), and "stole plaintiff money which violates fourth amendment" (*id.* at ¶356).

Plaintiff closed Angel's at the end of 2007, but sometime in early 2008 Issac was secretly negotiating with Matthew Green, another con artist, to operate/purchase Angel's and take it away from Plaintiff. (*Id.* at ¶¶76, 78.) Green begged Plaintiff to let him run Angel's and Plaintiff eventually agreed to make him a partner, the details of which were memorialized in an agreement prepared by Attorney Caputo. (*Id.* at ¶¶ 81, 84-90.) However, by March 2008, Green was not complying with the agreement, i.e., had failed to pay rent owed to Issac on Angel's. (*Id.* at ¶¶93-95.) During a surprise visit to Angel's, Plaintiff discovered that the utilities had not been paid and the inventory was gone. (*Id.* at ¶96.) Plaintiff provided an operational portfolio to Green to manage Angel's and laid out details for an upcoming event but Green failed to follow

---

[9] It is believed that Plaintiff is referring to the Asset Purchase Agreement dated May 10, 2007, attached to his Complaint at ECF No. 9-2 at 14-32.

the plan and Plaintiff lost $50,000. (*Id.* at ¶¶98-100.)  After that, Plaintiff had Issac terminate Green's partnership; when Green left, he allegedly stole furnishings, business and stereo equipment, and inventory worth over $100,000.  (*Id.* at ¶¶133-35.)

Plaintiff contends that Green violated state and federal law by (1) having his brother pose as a federal agent in an attempt to scare Plaintiff, (2) breaching the agreement to pay $5,700 rent to Issac while operating the Southside Fountain Room, and (3) breaching the agreement to make principal payments of $20,000 while operating the Southside Fountain Room.  (*Id.* at ¶¶430, 433-34.)  Plaintiff also claims that Green violated his 4th Amendment rights and due process (1) "while asked to retrieve American Express purchases made by Plaintiff," and (2) when he stole seven 46" flat screen TVs, fourteen couches, two fryers, $100,000 worth of inventory, and stereo equipment from Angel's.  (*Id.* at ¶¶432, 435-36.)

### c.    Rashene Hill, Michael Hill, Highest Galaxy, Vincent Locastro, All Pro Auto Mall, & Earl Lamar

The following events allegedly occurred from March 2008 through October of 2008.  In March of 2008, Plaintiff finished the business plans for and started a high-end, rental car/concierge business called Highest Galaxy.  Spence was a silent partner with Rashene Hill and Michael Hill.  (Compl. ¶¶ 73, 91.)  Attorney Caputo prepared the partnership agreement and formed Highest Galaxy, LLC.  (*Id.* at ¶ 73.)  Plaintiff assumed the role of advisor/consultant for all business dealings (*id.* at ¶74), while Michael Hill was in charge of running Highest Galaxy's daily operations (*id.* at ¶¶91, 107).  Plaintiff purchased office space for Highest Galaxy at 3350 Saw Mill Run Boulevard, which was the same location where Ryan Eichhorn operated Auto Effects. (*Id.*)

As part of Highest Galaxy's business, Plaintiff purchased numerous vehicles from various sources, including All Pro Auto Mall in Canonsburg, PA, where he met con-artist

Vincent Locastro sometime in March of 2008. (*Id.* at ¶¶ 74, 92.) Plaintiff alleges that around April of 2008, he became aware that Locastro was operating a major scale drug operation in Washington County and using the proceeds to pay off the politicians in Washington County for allowing him to conduct business there. (*Id.* at ¶104.) Plaintiff contends that he posed as a drug dealer only to gain as much information as possible from Locastro, figuring it would be a great opportunity to record Locastro's meetings and show his racial intentions—"using African American as a 1920's slave." (*Id.* at ¶105.)

Plaintiff also describes several business transactions he made with Locastro involving the purchase of vehicles for use in Highest Galaxy's business, from February 2008 to August 2008, in which Locastro allegedly scammed him. (*Id.* at ¶¶ 92, 112-15, 119, 123-24, 130.) By July 2008, Plaintiff alleges that he invested $340,000 with Locastro. (*Id.* at ¶121.)

In July 2008, Plaintiff hired Earl B. Lamar to take over the day to day operations of Highest Galaxy. (*Id.* at 122.) The only claim Plaintiff has asserted against Lamar is that he violated Pennsylvania state laws and many common laws causing him physical injuries. (*Id.* at ¶¶358-59.) By September of 2008, Lamar and Locastro were having major problems working with one another and fighting. Within days, Plaintiff alleges that Locastro had Lamar kidnapped for ransom. (*Id.* at ¶¶ 125-26.) However, Plaintiff later found out that the kidnappers and Locastro were informants working with the federal authorities. (*Id.* at ¶126.)

Plaintiff also contends that Locastro had one of his clients, Oronde Shelton, federally indicted. (*Id.* at ¶127-28.) In addition, Plaintiff contends that after Oronde Shelton was imprisoned, Locastro and All Pro Auto Mall took vehicles from him, some at gun point, but mostly with the help of federal agents, defaming the character of Highest Galaxy and violating state and federal laws. (*Id.* at ¶425.)

In 2008, Plaintiff alleges that Locastro (and Brian and Denise Haenze) had created a civil war within the Black communities by sharing information with others, showing rival enemies where one another lives and how much money they had (*id.* at ¶117), and by misleading and misguiding other African Americans who were snitching when Locastro and the Haenzes were the true snitches, causing the killing of Drew Lane and Sean Murphy (an African American) and the kidnapping of Earl Lamar, in violation of Plaintiff's civil, constitutional and state laws (*id.* at ¶402).

Plaintiff contends that by holding onto his money and assets, Locastro caused serious strain financially and personally on Plaintiff's life, in violation of federal and state laws. (*Id.* at ¶469.) In addition, Plaintiff contends Locastro and All Pro Auto Mall illegally repossessed his vehicle while earning $60,000 a month, in violation of federal and state laws. (*Id.* at ¶426.)

Plaintiff also asserts a number of other claims against Locastro, including:

(1)     Violation of his due process under the Fifth and Fourteen Amendments, the Eighth Amendment, and Pennsylvania state laws for overcharging Plaintiff for vehicles (*id.* at ¶¶285-88);

(2)     Violation of the Fifth and Fourteenth Amendments and Pennsylvania state laws for depriving Plaintiff of his property and selling it without compensation (*id.* at ¶¶289-90, 293;

(3)     Violation of the Fourth Amendment and Pennsylvania state laws for seizing Plaintiff's property without cause (*id.* at ¶¶291, 294);

(4)     Violation of the Fifth, Eighth, and Fourteenth Amendments and Pennsylvania state laws for trading Plaintiff's vehicles without permission for more expensive vehicles leaving Plaintiff with an excessive balance (*id.* at ¶¶292, 295-97), and putting illegal tracking devices on Plaintiff's vehicles (*id.* at ¶¶303-06);

(5)     Violation of the Fifth, Eighth, Ninth and Fourteenth Amendments and Pennsylvania state laws for writing false financial statements for Plaintiff's business, Highest Galaxy,

causing Plaintiff financial and emotion injury (*id.* at ¶¶298-302); and,

     (6)     Violation of the Fourth Amendment for stealing 17 vehicles worth $467,000 (*id.* at ¶307).

In addition, Plaintiff asserts a federal civil rights claim against Locastro and All Pro Auto Mall for incarcerating Plaintiff's friends with ill-willed intentions creating pressure toward Plaintiff and his five kids. (*Id.* 396.)

     As to Michael Hill, Plaintiff alleges that he was stealing from Highest Galaxy, as Michael had formed a secret relationship with Locastro, despite Plaintiff's warning not to get involved with Locastro or in any illegal activity while working with Plaintiff. (*Id.* at ¶¶ 107, 109-110.) Plaintiff contends that Michael Hill violated the Fifth, Sixth, Eighth, and Fourteenth Amendments and Pennsylvania state laws by helping Locastro get rid of Plaintiff's vehicles. (*Id.* at ¶¶313-17.) Plaintiff further contends that Michael Hill violated the Fifth, Eighth, and Fourteenth Amendments, Pennsylvania state laws, and unidentified civil and constitutional rights by giving false statements to and/or misguiding the authorities. (*Id.* at ¶¶318-19, 338, 341, 345-46, 407.) Michael Hill could have clarified the misconception but chose instead to violate Plaintiff's civil rights. (*Id.* at ¶408.) Plaintiff also claims that Michael Hill deprived him of his property without compensation in violation of the Fourth Amendment (*id.* at ¶336), shared his business secrets with others without authorization in violation of Pennsylvania state laws (*id.* at ¶340), ruined a $1 million per year exotic rental car business by engaging in illegal acts in violation of Pennsylvania state laws (*id.* ¶342), lied to Plaintiff about his brother, Rashene Hill, being a snitch when Michael was the lying snitch, violating civil and constitutional rights and state laws (*id.* at ¶410), and mislead and misguided investigators in "Report Form provided by

D.E.A. about the sale of a 2005 silver maserratti of $45,000.00 violating Plaintiff's civil and state laws" (*id.* at ¶409).

Plaintiff contends that in 2009 he gave Rashene Hill $20,000 to repair his credit because he was being extorted by Rashene Hill, in violation of state laws. (*Id.* at ¶406.) In addition, Plaintiff contends that Rashene Hill violated (1) the Fourth, Fifth, and Eighth Amendments and Pennsylvania state laws by helping Locastro get rid of Plaintiff's vehicles (*id.* at ¶¶309-12), (2) the Fourth Amendment by depriving Plaintiff of his property without compensation (*id.* at ¶337), and (3) Pennsylvania state laws by sharing Plaintiff's business secrets with others without authorization (*id.* at ¶337).

Plaintiff eventually fired Michael and Rashene Hill folding Highest Galaxy and sending them their shares of the company. (*Id.* at 121.)

### d.      **Defendants Ryan Eichhorn & Auto Effects**

Plaintiff alleges that Ryan Eichhorn and Auto Effects sold him numerous aftermarket parts for various high-end vehicles that were seized back from Plaintiff by misleading the authorities. (*Id.* at ¶344.)

In June 2008, Eichhorn expressed an interest in purchasing Highest Galaxy. Plaintiff put together a proposal for the purchase, asking $2.6 million based on inventory of $390,000 and list of over 100 clients. (*Id.* at ¶132.) Eichhorn never saw the entire business plan for Highest Galaxy until October 2008, after a visit from "four white guys with guns drawn" sent by Locastro to Auto Effects, a legitimate business establishment owned by Eichhorn and located at the same address as Highest Galaxy. (*Id.* at ¶¶ 132, 140.) After this incident, Eichhorn packed up his business, as well as the equipment, inventory, customer information, and business plans of Highest Galaxy, and relocated to Beaver County, where he started his own high-end rental car

business, assuming Plaintiff would be incarcerated. (*Id.* at ¶141.) To Eichhorn's surprise, Plaintiff showed up at his business in Beaver County, where Plaintiff noticed Highest Galaxy's office equipment. (*Id.* at ¶142.) Plaintiff requested that Eichhorn return all of his property, but Eichhorn told him he trashed most of it and offered to buy what he kept. (*Id.*) Eichhorn allegedly reported to the authorities that Plaintiff was pressuring him to return Plaintiff's belongings and how he "stole Plaintiff's $10 million business". (*Id.* at ¶143.)

Plaintiff asserts claims against Eichhorn and Auto Effects under the Fourth Amendment for stealing Plaintiff's $1 million per year car business, including 10 sets of rims, office equipment/furniture, and highly sensitive customer information (*id.* at ¶¶343, 348), and under Pennsylvania state law for not re-asphalting Plaintiff's property after being paid to do so (*id.* at ¶347).

### e. **Brian Haenze, Denise Haenze, Dennis Haenze & Auto Gallery**

Plaintiff alleges that he first met Brian and Denise Haenze (the "Haenzes"), the owners of the Auto Gallery, in January 2009. (Compl., ¶145.) According to Plaintiff, the Haenzes were pitching business ideas trying to get his money. (*Id.* at ¶146.) For a one-year period beginning in March of 2009, Plaintiff alleges that the Haenzes started selling him pain pills, misrepresenting what the pills actually were, misleading him into thinking the pills were not harmful, but he became addicted. (*Id.* at ¶¶146-50, 403.) By allegedly administering mass quantities of prescription pills to Plaintiff, the Haenzes "posed malpractice issues" on him, violating state and federal laws. (*Id.* at ¶422.)

Plaintiff contends that the Haenzes profited at a minimum of $240,000 from the sale of these pills, which he personally recorded and was reviewed by DEA, who knew about the Haenzes selling drugs but did not indict them. (*Id.* at ¶148.) Plaintiff contends that his addiction

caused major injuries/mental and physical problems, and his organs were destroyed in violation of state law. (*Id.* at ¶¶149, 403.) Rather than incarcerate the Haenzes for $3 million in illegal drug dealing, the authorities are alleged to have harassed and incarcerated Plaintiff for a legal business, which is discrimination. (*Id.* at ¶149.)

In 2008, Plaintiff alleges that Brian and Denise Haenze (and Locastro) had created a civil war within the Black communities by misleading and misguiding other African Americans who were snitching when the Haenzes and Locastro were the true snitches, causing the killing of Drew Lane and Sean Murphy (an African American) and the kidnapping of Earl Lamar, in violation of Plaintiff's "civil, constitutional and state laws." (*Id.* at ¶402.)

Between February 2009 and March 2010, Plaintiff describes several deals that he brokered with the Haenzes involving the purchase of luxury vehicles, in which he claims the Haenzes scammed him and ripped him off, and placed illegal tracking devices on certain vehicles purchased by Plaintiff. (*Id.* at ¶¶ 151-52, 154-55, 161-62, 166, 186-87, 191.) Plaintiff further alleges that Brian Haenze conned the state out of tax money on the cash deals that Plaintiff brokered for him, and Plaintiff provided this information to the authorities. (*Id.* at ¶157.)

Plaintiff also contends that in or around February 2010, he paid the Haenzes for chartered jet trips at $10,000 per trip, and that they allegedly made over $200,000 "planning and organizing trips wrongfully." (*Id.* at ¶184.) In March 2010, Plaintiff allegedly paid the Haenzes $250,000 cash for two apartment buildings. Plaintiff hired building inspectors to inspect the inside and outside of the buildings before final payment, but the Haenzes constantly denied the inspectors access to the inside of the buildings, and procrastinated until Plaintiff was incarcerated. (*Id.* at ¶¶151, 164). Plaintiff also contends the Haenzes did not own the two

apartment buildings free and clear as they represented to him (*id.* at ¶164), and they never intended to transfer the deeds to Plaintiff's company, "Real Estate 75" (*id.* at ¶165).

Plaintiff contends that he recorded numerous transactions with the Haenzes and set up surveillance by wearing a recorder on his person and by leaving recorders in their home and vehicles, to keep track of their business transactions.[10] (*Id.* at ¶¶162, 167, 174, 179, 182.) Plaintiff alleges that he turned the recordings over to the authorities, as well as other information about their illegal activities,[11] but the authorities did not indict the Haenzes. (*Id.* at ¶¶155, 157, 159, 179.) The authorities allegedly told Plaintiff's attorney, Mark Lancaster, that the recordings were illegal. (*Id.* at ¶179.) Despite the illegality of the recordings, Plaintiff claims that in April 2010, the authorities indicted Dennis Haenze,[12] the father of Brian and Denise, allegedly based, in part, on the recordings Plaintiff provided to the authorities, which actually corroborated Brian and Denise's involvement in the drug sales, but not Dennis'. (*Id.* at ¶¶148, 163, 169.) Plaintiff also contends that the Haenzes defamed his character in his own neighborhood, making it seem that Plaintiff had their father, Dennis, federally indicted when in actuality it was Denise and Brian who had their father indicted (*id.* at ¶169), which violated federal and state laws (*id.* at ¶421).

In addition to the recordings he made of the Haenzes' business transactions, Plaintiff received information from several individuals who worked for the Haenzes and confirmed his suspicions that the Haenzes were lying about Plaintiff and attempting to steal his money (as

---

[10] The latest date Plaintiff allegedly recorded a transaction with Brian Haenze is October 2011. (Compl. ¶155.)

[11] Plaintiff contends that the recordings show the Haenzes were engaged in selling prescription pills, 100's of kilos of cocaine, over 24 vehicles bilking the state and government out of taxes, two apartment buildings, charter jets, business investments, and a "host of other things." (*Id.* at ¶180.)

[12] Dennis Haenze was Plaintiff's personal driver for two years. (*Id.* at ¶¶163, 171.)

much as $1 million) before turning him over to the authorities. (*Id.* at ¶¶173-178.) Plaintiff further contends that in or around March of 2010, the Haenzes were working alongside law enforcement conducting illegal activities and shifting the blame to Plaintiff, thus violating his Fourteenth Amendment rights. (*Id.* at ¶¶ 165, 263, 412.) As a result of the Haenzes' lying to the authorities, Plaintiff contends he was incarcerated. (*Id.* at ¶185.) In March of 2010, Plaintiff contends that Brian Haenze set him up with the authorities, and after he was incarcerated, Brian Haenze took back everything that Plaintiff had purchased from him. (*Id.* at ¶263.) Brian Haenze tried to make it look as though Ellis was the snitch, when Plaintiff knew that the real snitch was Brian Haenze. (*Id.* at ¶¶264-65.) Plaintiff further contends that the Haenzes, by holding onto his money and assets, caused serious strain on his business and personal life in violation of federal and state laws. (*Id.* at ¶418.)

In October of 2010, Plaintiff attempted to forfeit 21 vehicles to the federal authorities through Attorney Lancaster, which was refused due in part because the Haenzes were being paid with Plaintiff's own money to lie, which this suit will prove and show violations of his rights under the First, Fourth, Fifth, and Fourteenth Amendments. (*Id.* at ¶169.)

Plaintiff contends that the described incidents of illegal activity engaged in by the Haenzes continued throughout 2012 and show that they are corrupt, manipulators, liars, and racist, and that only African Americans are indicted while Caucasians are not.[13] (*Id.* at ¶¶ 156-57, 162, 172, 179-81, 183.) Plaintiff avers that this is a violation of the Equal Protection Clause of the Fourteenth Amendment. Specifically, Plaintiff alleges that the facts alleged show that the Haenzes, who are Caucasian (*id.* at ¶404), were engaged in illegal activities but were not indicted

---

[13] For example, Plaintiff contends that the Haenzes had a disagreement with his cousin, Montel Staples, over a vehicle Plaintiff purchased from them for Staple's daughter, which allegedly caused the Haenzes to "put emphasis on Mr. Staples role as a drug dealer, a major lie imposed by the Haenzes." (*Id.* at ¶172.)

while an unidentified African American, who sent one package through the U.S. Mail containing $263,000, and was then forced to accept responsibility in open court on April 25, 2012 for 10.9 kilos of cocaine that he never saw nor spoke about, was indicted. (*Id.* at ¶¶180-81.) Plaintiff further contends that the Haenzes are committing Hate Crimes, ripping off, implicating in crimes, and killing only African Americans (Sean Murphy). (*Id.* at ¶¶ 185, 187, 404.)

Plaintiff also asserts a number of other claims against Brian and Denise Haenze and the Auto Gallery, including:

> (1)     Violation of his due process under the Fifth and Fourteen Amendments, the Eighth Amendment, and Pennsylvania state laws for overcharging Plaintiff for vehicles (*id.* at ¶¶320-23);

> (2)     Violation of the Fifth and Fourteenth Amendments and Pennsylvania state laws for depriving Plaintiff of his property and selling it without compensation (*id.* at ¶¶324-25, 327);

> (3)     Violation of the Fourth Amendment and Pennsylvania state laws for seizing Plaintiff's property without cause (*id.* at ¶¶326, 328); and,

> (4)     Violation of the Fifth, Eighth, and Fourteenth Amendments for writing false financial statements for Plaintiff's business, Highest Galaxy, causing Plaintiff financial and emotion injuries (*id.* at ¶¶329-31).

In addition, Plaintiff asserts a claim against Brian, Denise and Dennis Haenze for violation of his freedom and liberty for using extortion-like methods against him. (*Id.* at ¶397.)

### f.     John Lee & International Investigative Services

In May of 2011, Plaintiff hired John Lee, a private investigator with International Investigative Services ("IIS"), to obtain necessary information from the Department of Transportation, the Auto Gallery, and All Pro Auto Mall regarding the business transactions Plaintiff conducted with the Haenzes and Mr. Locastro. (Compl., ¶¶192-94.) Lee and IIS allegedly were also paid to obtain crucial financial records of "many Defendants" but did not

obtain any, thus violating state and federal laws and hindering Plaintiff's due process in violation of the Fourth Amendment. (*Id.* at ¶¶431, 438.) While employed by Plaintiff, Lee and IIS allegedly allowed the Haenzes to demolish the penthouse above one of Plaintiff's workshops built at 5945 Buttermilk Hollow Road without obtaining footage, thus violating state law. (*Id.* at ¶437.)

Plaintiff further contends that Lee was given "top secret information and duties; tons of business dealings and evidence that was jeopardized at the hands of a licensed professional with a confidentiality agreement with Mr. Caputo, whom Mr. Caputo recommend Mr. Lee." (*Id.* at ¶195.) Plaintiff alleges that he paid Mr. Lee but Lee failed to conduct any private investigation work (*id.* at ¶194), and accomplished "absolutely nothing" in over one year working directly with the Plaintiff, wasting his time, information and money (*id.* at ¶196). Plaintiff claims "[i]ts known that all said instances are racially motivated with a caucassion behind the movement." (*Id.*)

By not completing work for which they were paid, Lee and IIS are alleged to have violated the due process clause of the Fifth Amendment. (*Id.* at ¶332.) In addition, Plaintiff contends that Lee and IIS (1) broke the attorney-client relationship violating antitrust laws and the Fourth Amendment (*id.* at ¶¶333-34), (2) shared Plaintiff's secrets with others in violation of Pennsylvania state laws and the Fourth Amendment (*id.*), (3) disclosed Plaintiff's witnesses and evidence to others in violation of antitrust laws and the Sixth Amendment (*id.* at ¶335), (4) allowed Plaintiff's evidence and witnesses to be jeopardized in violation of the Fourth Amendment and state laws (*id.* at ¶¶382, 384-85), and (5) shared Plaintiff's defense and civil strategies with the authorities allowing Brian, Denise and Dennis Haenze and the Auto Gallery to

reconstruct the building Plaintiff built for $115,000 at 5945 Buttermilk Hollow Road, in violation of civil and constitutional rights and state laws (*id.* at ¶401).

g.      **Real Estate 75, Doug Meyers, Cortorra Brownfeild**

In March of 2009, Plaintiff stored $250,000 worth of office equipment, safety equipment, remodeling equipment, janitorial equipment, and auto detailing equipment in a building located at 621 Plum Street, Oakmont, PA, which he rented from the owner, Doug Meyers. (Compl., ¶¶ 197-200.) Plaintiff intended to use this equipment in a new business he formed in November of 2009 called "Real Estate 75" with partners Cortorra Brownfeild and Christina Giggliotti. (*Id.* at 215.) Real Estate 75, a "multimillion dollar redevelopment project managing firm," was started with $30,000 cash and over $100,000 in equipment provided by Plaintiff, and $100,000 in assets contributed by Cortorra Brownfeild. (*Id.* at ¶¶ 218, 220.) Plaintiff set up a business account at PNC Bank for Real Estate 75 with financing for $250,000. (*Id.* at ¶216.) Plaintiff developed the business plan, and provided the system and tools for the business; his partners were responsible for carrying out his business plan and following the system. (*Id.* at ¶¶215, 221.) Ms. Gigliotti performed her duties well, but Ms. Brownfeild did not. (*Id.* at ¶221.)

On several occasions between January and February 2010, Doug Meyers illegally entered the premises occupied and rented by Plaintiff at 621 Plum Street. (*Id.* at ¶¶200-01.) During this same period of time, all of the security cameras had been spray painted and Plaintiff's Rottweiler had been killed. (*Id.* at ¶201-02.) Sometime thereafter in February of 2010, federal authorities allegedly raided 621 Plum Street and confiscated all of Plaintiff's equipment plus eight utility vehicles and a 1987 Buick Grand National. (*Id.* at ¶¶200, 203.) Meyers allegedly told Plaintiff that the federal authorities changed the locks on 621 Plum Street after they raided it. (*Id.* at ¶ 203.) Plaintiff sent Michael Hill to retrieve the inventory slip supposedly left behind by the

federal authorities with Meyers; however, when Hill met with Meyers, he was not given the inventory slip, but instead, Hill was ambushed by the authorities to go along with their conspiracy to entrap Plaintiff. (*Id.* at ¶204.)

Plaintiff contends that while Hill was supposedly cooperating with the authorities, he was actually lying to the authorities, which was contrary to a signed contract Plaintiff had with Hill wherein they agreed that if either of them came in contact with the authorizes, they agreed to be truthful.[14] (*Id.* at ¶205.) Plaintiff further contends that Hill conspired with Meyers by stating that everything had been cleared out of 621 Plum Street by the authorities (*id.*), when, in fact, Meyers possessed Plaintiff's work vehicles as well as his equipment, and the authorities only took Plaintiff's 1987 Buick Grand National (*id.* at ¶¶207, 208). Thus, Plaintiff submits that as a result of his lies, Hill hindered Plaintiff's ability to file a civil suit two years earlier. (*Id.* at ¶206.)

From February 2010 through October 2010, Plaintiff alleges that Meyers and the federal authorities "played back and forth games with whom actually had what." (*Id.* at ¶210.) By October of 2010, it became obvious to Plaintiff that Meyers did indeed have all of his equipment and work vehicles, and with the assistance of Attorney Lancaster, got Meyers to turn over all of Plaintiff's work vehicles, although the vehicles had been stripped down on the inside. (*Id.* at 208-09.) However, Meyers did not turn over any of Plaintiff's equipment, maintaining that the authorities took everything. (*Id.* at ¶208.)

As a result of Meyers' hoarding Plaintiff's equipment and work vehicles, Meyers hindered Plaintiff from procuring three major redevelopment jobs totaling over $1 million. (*Id.* at ¶¶ 216, 219.) In addition, Plaintiff alleges that the government authorities, Meyers and

---

[14] Attorney Sally Frick allegedly possessed the signed agreement between Michael Hill and Plaintiff. (Compl., ¶205.)

Brownfeild took his business plans for Real Estate 75, thereby preventing Real Estate 75 from operating. (*Id.* at 220.) Through his $700,000 legal team, Plaintiff contends he attempted to retrieve his business plan for Real Estate 75, but was unsuccessful. (*Id.* at ¶221.)

Based on Meyers' alleged actions, Plaintiff has asserted the following claims against Meyers:

> (1)     Violations of the Fourth, Eighth and Fourteenth Amendments for searching and seizing Plaintiff's property for the attorneys without a warrant (*id.* at ¶¶364-66);
>
> (2)     Violations of the Eighth and Fourteenth Amendments and Pennsylvania Animal Cruelty Laws for poisoning Plaintiff's Rottweiler in order to enter the warehouse (*id.* at ¶¶367, 369-70);
>
> (3)     Breaking and entering and burglary under Pennsylvania law for entering Plaintiff's warehouse without a warrant and stealing his property (*id.* at ¶368);
>
> (4)     Violations of many common laws, federal and state laws, causing physical injuries and emotional distress (*id.* at ¶¶371-72);
>
> (5)     Violations of the Fourth Amendment and federal and state laws for stealing over $250,000 of equipment (*id.* at ¶¶373-74); and,
>
> (6)     Violation of the Fourteenth Amendment for making false statements to falsely imprison Plaintiff (*id.* at ¶375).

After the authorities took his business plan, Plaintiff contends that Ms. Brownfeild emptied the business account for Real Estate 75, leaving the company financially unable to operate. (*Id.* at ¶222.) Plaintiff did not discover this until February 2011 when he noticed that $10,000 cash that was given to Ms. Brownfeild for deposit in Real Estate 75's PNC account did not show up on the account statement. (*Id.* at ¶223.) Ms. Brownfeild also allegedly absconded with several vehicles worth over $53,000 and belonging to Real Estate 75, which Plaintiff claims violated the Fourth Amendment. (*Id.* at ¶¶223, 376.)

## 2.    The Attorney Defendants[15]

With regard to the Attorney Defendants, Plaintiff alleges, in essence, that they breached their duties to him by scamming him—overcharging him and not doing what he hired them to do—and hindered the civil process by conspiring to prevent him from filing this civil action. Plaintiff also contends that some of the Attorney Defendants became involved in the conspiracy to incarcerate Plaintiff.

Specifically, Plaintiff alleges that he reported Locastro's illegal activities to Attorneys Frick and Caputo, and played recordings of his conversations with Locastro for Attorney Frick, so they could report these incidents to the authorities and a grand jury investigation could be commenced, but they failed to report this information to the authorities in violation of their duties to him.  (*Id.* at ¶¶117, 121.)    From the information he provided, Plaintiff alleges the attorneys and government should have been aware that Locastro was having people in the Black communities killed in Allegheny County while he sat in Washington County, but they failed to do anything.[16]  (*Id.* at ¶117.)  Through Attorney Frick, Plaintiff was at all times attempting to go public with the occurrences of Locastro—he was getting African Americans killed from his vicious acts.  (*Id.* at ¶129.)

In December of 2008, Plaintiff contends that Attorney Frick, to whom he was reporting all information, "only Became involved into the conspiracy to incarcerate [him]. . . . Ms. Frick was used . . . with her lying and telling [him ]there was a warrant for his arrest in  Cuyahoga County, Ohio."  (*Id.* at ¶143.)  Plaintiff further contends that the corrupt authorities needed him

---

[15] Unless otherwise noted, references to "Attorney Defendants" does not include Attorney Louis Caputo.

[16] Plaintiff contends that Locastro had one of Plaintiff's customers (Drew Kane) killed while sitting in a vehicle owned by Plaintiff sometime in the second quarter of 2008, creating a negative reputation for Highest Galaxy, violating state laws.  (Compl., ¶417.)

to be incarcerated in order for their conspiracy theory investigation to continue. (*Id.*) Once the Attorney Defendants (Zimmerman,[17] Difenderfer, Haber, Lancaster, Frick, Bills, Levenson, Sughrue, Wymard, Love and Starz) spoke to the "corrupt" authorities, they all kept his money or property. (*Id.* at ¶141.)

From February 2010 through October 2010, Plaintiff alleges that Attorneys Difenderfer, Haber, Levenson, Sughrue, and Lancaster, whom Plaintiff paid to retrieve the equipment Meyers and/or the federal authorities allegedly took from his warehouse at 621 Plum Street, played along with the conspiracy between Meyers and the federal authorities, and they did nothing to retrieve it. (*Id.* at ¶¶ 210, 213.) By failing to file any motions or do anything to retrieve his equipment, these attorneys allowed Meyers, a government informant, to get $250,000 worth of equipment for free. (*Id.* at ¶211.) As a result, Plaintiff contends that these attorneys are also liable for the equipment. (*Id.* at ¶212.) Plaintiff contends that his own attorneys (but not Caputo) were working against him instead of with him, violating their oath; none of them filed a motion, sent a letter, or did anything to regain his possessions. (*Id.* at ¶170.) However, Plaintiff concedes that in October 2010, Attorney Lancaster assisted Chastity Thompson in retrieving some of the vehicles taken during the raid of 621 Plum Street. (*Id.* at ¶208.)

In February of 2011, Plaintiff alleges that he asked Attorneys Mark Lancaster, William Difenderfer, Kenneth Haber, Sally Frick, George Bills, Douglas Sughrue, and Stanton Levenson to contact Attorney Caputo to gain access to paperwork, business plans, contracts, and other

---

[17] Plaintiff references Attorney Zimmerman several times in the Complaint but he has not included him as a named defendant in the caption of the Complaint nor in Part III of the Complaint wherein he sets forth all of the Defendants, *see* ¶¶4-39. Therefore, the Court finds that Attorney Zimmerman is not a party to this lawsuit, despite Plaintiff's sporadic references to him in the body of the Complaint.

materials belonging to Highest Galaxy which were confiscated in the raid by the authorities in Cuyahoga County, Ohio, but none of them contacted Attorney Caputo. (*Id.* at ¶116.)

In or around June 2011, Plaintiff alleges that the Attorney Defendants hindered the civil process, by engaging in a "'BIG' conspiracy with all of them who were paid over $600,000 to gain absolutely nothing, knowing Plaintiff [would] sue and 'reveal' to the world the trading in of the vehicles was a 'scam' that the 'Authoritys' [sic] was in agreeance [sic] with for more expensive vehicles. Mr. Locastro was scamming persons out of their money along with the authoritys [sic]. This was but only one of the major investigation Plaintiff paid Ms. Frick for but was denied and scammed out his money." (*Id.* at ¶118.) Plaintiff alleges that he only became aware of the Attorney Defendants' actions when Attorney Thomas Brown[18] gained access to the government's files in February 2012. (*Id.* at ¶118.)

Plaintiff contends that Attorneys Difenderfer, Haber, Levenson, Lancaster, Sughrue, Wymard, Frick, Bills, Starz, and Love kept very important evidence which they did not mention to protect someone else's best interest. (*Id.* at ¶257.) Plaintiff further contends that these attorneys, as well as Caputo, all knew that Plaintiff wished to pursue the instant matter and tried to keep him from pursing it and deter his decision, making them just as liable as all of the other Defendants, and thus violating the Sixth Amendment. (*Id.* at ¶¶268-69, 381.)

In addition to claiming a violation of the Sixth Amendment, Plaintiff asserts the following claims against the Attorney Defendants:

> (1) Violations of the Fifth and Fourteenth Amendments for misleading and giving false statements to the authorities (*id.* at ¶¶390-91); and

---

[18] Attorney Thomas Brown was appointed as stand-by counsel to assist Plaintiff with his criminal trial in Case No. 2:09-cr-105 in this District. Plaintiff requested and was granted permission to represent himself in that criminal matter.

(2)   Violations of constitutional, civil rights and state laws for failing to disclose to the authorities that the other Defendants were misleading them despite having knowledge of such misleading (*id.* at ¶399) and sharing Plaintiff's defense strategies with the authorities and allowing the three Haenzes and Auto Gallery to reconstruct a building that Plaintiff had built for $115,000 at 5945 Buttermilk Hollow Road (*id.* at ¶400).

As to Attorney Bills only, Plaintiff asserts claims for violations of his constitutional, civil rights and state laws for misguiding the authorities while working with them and Michael Hill when he (Bills) could have clarified the misconception.  (*Id.* at ¶¶407-08.)

### 3.   <u>Washington County</u>

In the "Facts" section of his Complaint, Plaintiff does not allege any actions by an employee or agent of Washington County, but rather, only peripherally references Washington County when discussing the actions of Vincent Locastro and All Pro Auto Mall.  For example, Plaintiff alleges that Locastro's "middle man" brought  "tons of tax money" into Washington County from Allegheny County, which Locastro used for personal favors and contributed a lot of money to the campaigns of several Washington County politicians, a method Locastro called "Upscale Drug Dealing."   (Compl. ¶¶103-04.)   Plaintiff further alleges that Locastro gave "kickbacks to the Politicians who allow[ed] him to live and operate such a Major Scale Drug and Vehicle operation in Washington County."  (*Id.* at ¶104.)

In Section VI entitled "Legal Claims," Plaintiff sets forth three claims against Washington County.  First, Plaintiff contends that Locastro's illegal activities were reported to Washington County, which gave Locastro a license to operate in Washington County in violation of Plaintiff's Fourth Amendment rights.  (*Id.* at ¶427.)  Second, Plaintiff postulates that had the Washington County commissioners or District Attorney followed correct protocol, Locastro would not have been able to kidnap Earl Lamar and phone Plaintiff for ransom, thus violating

federal and state laws. (*Id.* at ¶428.) Finally, Plaintiff contends that he contacted Washington County through email "as to occurrences of Vincent Locastro" later causing Plaintiff physical and emotional pain violating [his] state and federal laws." (*Id.* at ¶429.)

### 4. All Defendants Generally

Plaintiff also sets forth a number of allegations generally against all Defendants. For example, in paragraph 160 of the Complaint, Plaintiff avers: "There were agreements in place with every caucassion [sic] involved, each and everyone broke agreements. Each suit plaintiff filed proves each account. The defendants are true criminals whom tried to run and use the black man's life as a bargaining chip. Violating the civil and constitutional rights of the african americans." Also, in paragraph 254, Plaintiff alleges:

> [I]ts [sic] these persons such as <u>Vincent Locastro</u>, Jickie Hayes, David Ellis, Michael Harris, William Difenderfer, Kenneth Haber, . . . Keith Hart, Dennis, Denise, & Brian Haenze's, the Auto Gallery, Auto Effects, Real Estate 75, A.J. Hifa Corp., All Pro Auto Mall, Cortorra Brownfeild, Doug Meyers, Michael Issac, Rashene & Michael Hill's, . . . Ryan Eichhorn, Earl Lamar, Mark Lancaster, Doug Sughrue, . . . Sally Frick, . . . George Bills **ACCOUNTABILITY** none of these persons are accountable for their own actions, but all benefitted. Once caught up or back against wall each person only knows how to shift blame, as though they didn't benefit.

(Emphasis in original).[19]

Plaintiff further alleges that all Defendants "caused mental duress, postmatic [sic] stress, pain and suffering and blackmale [sic] on Plaintiff and Plaintiff's family including (5) children." (*Id.* at ¶423.) As to Defendants Meyers, Lee, IIS, All Pro Auto Mall, Denise, Brian and Dennis Haenze, Auto Galaxy, Issac, Angel's Night Club, and Green, Plaintiff alleges they violated his due process right by not having Plaintiff's finances at his own disposal. (*Id.* at ¶439.) It is

---

[19] Plaintiff lists several other individuals in paragraph 254 but none of them are named parties in this lawsuit and have been excluded, thus the ellipses.

further alleged that Defendants Locastro, All Pro Auto Mall, Briand Haenze, Auto Galaxy, Issac, and Angel's Night Club violated his due process and state laws by hindering his ability to write checks for his legal process.  (*Id.* at ¶440.)  Plaintiff also alleges that these same Defendants and Green violated the Fourth Amendment.  (*Id.* at ¶441.)

## C.    DISCUSSION

Plaintiff asserts a plethora of claims under identified and unidentified constitutional provisions, and federal and state laws.  The alleged violations of identified federal laws and/or constitutional provisions include 42 U.S.C. §§1981, 1982, 1983, 1985, 2000c-5, antitrust laws, and the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution.   The alleged violations of state law include civil conspiracy, "posing malpractice actions," breach of contract, extortion, Pennsylvania Animal Cruelty law, breaking and entering, burglary, and defamation.

Although this Court must liberally construe Spence's Complaint, as he is proceeding pro se, he is nonetheless required to allege sufficient facts in his Complaint to support valid claims. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir.2013). To do so, Spence must plead enough facts, accepted as true, to plausibly suggest entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir.2012)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 679 (2009)). As shown below, this he has failed to do.

### 1.    <u>Section 1983 & Constitutional Violations</u>

With the exception of Washington County, all of the named Defendants are private actors or businesses; none are alleged to be agents, officials, employees, or agencies of any local, state or federal government.  Plaintiff has asserted claims under 42 U.S.C. §1983, as well as alleged

violations of the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments against many of the Defendants.

In order to "state a claim of liability under §1983, [a plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citation omitted). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . , subjects, or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  Therefore, to state a claim for relief under §1983, Plaintiff must demonstrate both that Defendants were acting under color of state law and that a constitutional violation was directly caused by Defendants' conduct.  *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).  Moreover, "[i]t is well established that liability under § 1983 will not attach for actions taken under color of federal law." *Brown v. Philip Morris*, 250 F.3d at 800 (quoting *Bethea v. Reid*, 445 F.2d 1163, 1164 (3d Cir. 1971)).

The Fourteenth Amendment to the U.S. Constitution provides in relevant part:  "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV. Plaintiff has asserted claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

In addition to the Fourteenth Amendment, which explicitly applies to the states, Section 1983 actions may be predicated upon violations of rights guaranteed by the First, Fourth, Fifth, Sixth or Eighth Amendments. The First Amendment to the U.S. Constitution prohibits the making of any law respecting an establishment of religion, impeding the free exercise of religion, abridging the freedom of speech, infringing on the freedom of the press, interfering with the right to peaceably assemble, or prohibiting the petitioning for a governmental redress of grievances. U.S. Const. amend. I. The Supreme Court has applied the First Amendment to the states through the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York,* 268 U.S. 652, 666 (1925).

The Fourth Amendment to the U.S. Constitution prohibits the unreasonable searches and seizures of a person or his property.[20] Only seizures made by a state or federal officer are protected by the Fourth Amendment. *United States v. Jacobsen,* 466 U.S. 109, 113-14 (1984) (footnote omitted) ("This Court has also consistently construed this protection as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting))).

---

[20] The Fourth Amendment ensures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The Fifth Amendment provides, in relevant part, "nor shall [any person] be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V, cl. 3-5. Like the Fourth Amendment, the Fifth Amendment proscribes only governmental action and does not apply to private actors. *Augustin v. SecTek, Inc.,* 807 F.Supp. 2d 519, 526 (E.D.Va. 2011) (citing *Jacobsen,* 466 U.S. at 113) (other citations omitted); *see also Thompson v. Wagner,* 631 F.Supp. 2d 664, 671 (W.D.Pa. 2008) (due process clause of the Fifth Amendment limits the actions of only the federal government) (citation omitted). The Takings Clause "prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island,* 533 U.S. 606, 617 (2001). Thus, the government may confiscate private property so long as two conditions are met: (1) the taking must be for a "public use," and (2) "just compensation" must be paid to the property owner. *Brown v. Legal Found. of Wash.,* 538 U.S. 216, 231-32 (2003) (footnote omitted). Although the Takings Clause of the Fifth Amendment applies to the States (through the Fourteenth Amendment), as well as the Federal Government, *see Brown*, 538 U.S. at 232 n. 6; *Palazzolo*, 533 U.S. at 617, the Complaint is completely devoid of any allegations that the alleged takings were effectuated by state actors or under the authority of any state government.

The Sixth Amendment to the U. S. Constitution sets forth rights related to criminal prosecutions by the federal government, and includes the right of the accused to a speedy and public trial; the right to an impartial jury; the right to be informed of the nature and cause of the accusations against him; the right to confront the witnesses against him; the right to call and compel witnesses to testify on his behalf; and the right to have the assistance of counsel for his

defense. U.S. CONST. amend. VI. The Sixth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 148 (1968) (citations omitted).

The Eighth Amendment to the U.S. Constitution states: "Excessive bails shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. " U.S. CONST. amend. VIII. The Supreme Court has determined that the Cruel and Unusual Punishments Clause applies to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660 (1962).

### a. Section 1983 Liability

In the case at bar, Plaintiff has not pled that he was deprived of any rights under the First, Fourth, Fifth, Sixth, Eighth or Fourteenth Amendments *by any state officers*, or that the Defendants, all private individuals (except for Washington County), *were acting under the color of state law* at the relevant times. Nor does the Complaint contain any allegations from which it can be inferred that the Defendants "acted together with" or "obtained significant aid" from clearly identified state officials. *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).[21] Moreover, Plaintiff's assertions that Locastro resided in Washington County, paid taxes there, and made contributions to political campaigns and/or paid kickbacks to politicians are vague and

---

[21] In *Lugar,* the Supreme Court established a two prong test to determine whether and when a private party who invokes a state procedure acts under color of law for purposes of Section 1983:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . .. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

457 U.S. at 937.

conclusory and fail to identify any Washington County officials that potentially could have acted together with or provided significant aid to Locastro. Therefore, it cannot reasonably be inferred from these allegations that Locastro was a state actor for purposes of Section 1983 liability.

Likewise, Plaintiff has failed to allege sufficient facts to plausibly suggest entitlement to relief against Washington County based on the Fourth Amendment, federal or state laws. The conclusory allegations in the Complaint suggest only that Locastro resided in Washington County, brought tax money into Washington County from his dealings in Allegheny County, contributed money to the campaigns of several unidentified Washington County politicians, and gave kickbacks to politicians who allowed him to live and operate a "Major Scale Drug and Vehicle operation" in Washington County. Even if true, these allegations do not show a violation of *Plaintiff's* Fourth Amendment rights, or any other constitutional rights, or federal or state laws, as Plaintiff has failed to alleged any injury *to him personally* as a result of the alleged inaction by Washington County officials (allowing Locastro to operate in Washington County). Moreover, the alleged failure of the Washington County Commissioners and District Attorney to follow "correct protocol" with regard to the alleged kidnapping of Earl Lamar is similarly vague and conclusory, fails to identify which federal and state laws were allegedly violated, and any alleged injury to Plaintiff (Locastro's request that Plaintiff pay ransom for Lamar) is too attenuated to show that Plaintiff suffered any injury as a result of the alleged inactions by Washington County. Finally, Plaintiff's claim that he contacted Washington County regarding Locastro's "occurrences" which later caused him physical and emotional pain violating unidentified state and federal laws, is wholly conclusory and thus is insufficient to plausibly show entitlement to relief.

Plaintiff also attempts to assert a claim under the Equal Protection Clause of the Fourteenth Amendment. This claim derives from the alleged incidents of illegal activity engaged in by the Haenzes, which Plaintiff contends show that the Haenzes, who are Caucasian, were engaged in illegal activities but were not indicted while an African American, who had little involvement in a drug conspiracy, was indicted and forced to accept responsibility (i.e., entered into a plea agreement). What Plaintiff may be getting at here is a selective prosecution claim, which would implicate a violation of the Equal Protection Clause of the Fifth Amendment. *United States v. Armstrong,* 517 U.S. 456, 464 (1996). However, the proper defendant in such a claim is the prosecutor who is accused of engaging in selective prosecution. That party is not before this Court and would have to be sued in a separate lawsuit.[22] Accordingly, Plaintiff's Equal Protection Clause claim under the Fourteenth Amendment fails as a matter of law.

Therefore, Plaintiff has failed to state plausible Section 1983 claims based on the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments against any of the Defendants. Accordingly, the Court recommends that Plaintiff's Section 1983 claims against the Defendants for alleged violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, be dismissed with prejudice.[23]

### b. Other Alleged Constitutional Violations

The allegations in the Complaint also do not support claims brought directly under the First, Fourth, Fifth, Sixth, Eighth, or Ninth Amendments for a violation of Plaintiff's

---

[22] The Court is not suggesting that Plaintiff has a viable claim for selective prosecution. Plaintiff bares a heavy burden in proving such a claim. *Armstrong,* 517 U.S. at 463.

[23] In addition, to the extent Plaintiff's Section 1983 claims are predicated upon conduct or events occurring prior to July 31, 2010, his claims is also time-barred. *Carpenter v. Young,* No. Civ. A. 04-927, 2005 WL 1364787, *4 (E.D.Pa. June 1, 2005) (statute of limitations for Section 1983 claims is the two-year statute of limitations for personal injury actions in Pennsylvania) (citing *Garvin v. City of Phila.,* 354 F.3d 215, 220 (3d Cir. 2003); *Vitalo v. Cabot Corp.,* 399 F.3d 536, 542 (3d Cir. 2005)).

constitutional rights. A prerequisite to bringing claims under the U.S. Constitution is some act committed by persons acting under color of federal law. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). In *Bivens*, the United States Supreme Court implied a right of action directly under the Fourth Amendment to the United States Constitution to allow a victim of an unconstitutional search to sue federal officials personally for damages. "'*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'" *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). The United States Supreme Court's "authority to imply a new constitutional tort, not expressly authorized by statute, is anchored in [its] general jurisdiction to decide all cases 'arising under the Constitution, laws, or treaties of the United States.'" *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (quoting 28 U.S.C. § 1331) (other citations omitted).

In order to state a *Bivens* claim, which is the federal equivalent of the Section 1983 cause of action against state actors, a plaintiff must allege the following: (1) Defendants must have been acting under color of federal law; and (2) Defendants must have caused the plaintiff to be deprived of a right secured by the Constitution and laws of the United States. *Brown v. Philip Morris,* 250 F.3d 789, 800 (3d Cir. 2000) (citation omitted); *Corr. Servs. Corp.,* 534 U.S. at 66.

In determining whether the actions of a private party should be attributed to the federal government, courts apply the Section 1983 "state actor" test delineated in *Lugar v. Edmondson Oil*.[24] *Brown,* 250 F.3d at 801. "*Lugar* requires courts to ask 'first whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in

---

[24] *See* Note 21, *supra.*

[federal] authority ... and second, whether the private party charged with the deprivation could be described in all fairness as a [federal] actor.'" *Id.* (quoting *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620 (1991) (applying *Lugar*)).

In the case at bar, none of the Defendants is alleged to be an official, agent or employee of the federal government. Moreover, the Complaint does not allege any interaction between the Defendants and any identified federal agent or official. Although the Complaint does allege some interaction between unidentified "authorities" or "federal authorities" and Defendants Locastro and All Pro Auto Mall (took vehicles from Plaintiff using the help of federal agents in violation of federal law[25]), Meyers (seized property for authorities without a warrant in violation of the Fourth and Eighth Amendments[26]), Michael Hill ("working with authoritys along side Attorney George Bills" in violation of constitutional laws[27]), and possibly Attorneys Frick, Lancaster, and Bills [28] (suggesting, at best, that these attorneys provided information to or misled the "authorities") involving alleged violations of the Fourth and Eighth Amendments and other unidentified federal laws, these allegations are simply insufficient to plausibly suggest entitlement to relief for a violation under either the Fourth or Eighth Amendments, or any other constitutional right generally invoked by Plaintiff.

Merely because Plaintiff alleges that the above Defendants made false statements to federal authorities or to snitches who in turn gave the information to federal authorities, or

---

[25] Compl., ¶425.

[26] *Id.* at ¶¶364, 366.

[27] *Id.* at ¶407.

[28] Plaintiff's allegations against the Attorney Defendants, including Caputo, sound more like possible claims for professional malpractice (the attorneys stalled and tried to prevent Plaintiff from filing this lawsuit; they did not perform the work they were hired to do), which should have been asserted in state court. Similarly, the breach of contract claims are also based on state law, and neither those claims nor the malpractice claims give rise to a violation of Plaintiff's Sixth Amendment rights against the Attorney Defendants.

asserts conclusory allegations of "extortion," that does not suggest that these Defendants were acting under color of federal law. "Although private parties may be found to have engaged in 'governmental' action sufficient to subject their activities to the fifth amendment," *Local 1498, Am. Fed'n of Gov't Employees v. Am. Fed'n of Gov't Employees, AFL/CIO,* 522 F.2d 486, 492 (3d Cir. 1975) (footnote omitted), this case does not present such circumstances. A liberal construction of the Complaint reveals no allegations by which federal governmental participation can be inferred from the alleged conduct of the Defendants. The Complaint fails to (1) identify the federal authorities who allegedly received the information or requested that Plaintiff's property be seized, (2) what their involvement was, and (3) when and where the information was allegedly exchanged. The conclusory allegations amount to nothing more than speculation. Consequently, Plaintiff has failed to allege any facts from which it can be inferred that the actions of Defendants Locastro, All Pro Auto Mall, Michael Hill, Doug Meyers or George Bills can be attributed to unidentified "federal authorities" to support a viable *Bivens* action for alleged violations of his rights under the Fourth and Eighth Amendments.

Similarly, Plaintiff's alleged violations of his rights under the First, Fifth, Sixth and Ninth Amendments fail because the Complaint is devoid of any allegations showing that the Defendants allegedly involved in violating those amendments were acting under color of federal law.

The sole allegation in the Complaint that mentions the First Amendment is found in paragraph 169, and states: "The Plaintiff attempted to forfeit 21 vehicles to Federal Authoritys [sic] through Attorney Mark Lancaster, October 2010, which was Refused Due in Part they were Being Paid with the Plaintiff's own money to lie which this suit will Prove and show the many violations of the Plaintiff's First, Fourth, Fifth and FourtEENTh amendments." Compl., ¶169.

This sole, conclusory allegation does not establish that any of the Defendants were acting under color of federal law, nor does it suggest in any way that a right under the First Amendment was violated.

As to the Fifth Amendment,[29] Plaintiff has asserted claims under the (1) Takings Clause against Defendants Locastro, Brian and Denise Haenze, Michael Issac and Angel's for taking his vehicles or other property without compensation and/or stealing hundreds of thousands of dollars from him; and (2) Due Process clause against Brian, Denise, and Dennis Haenze (overcharging Plaintiff for the vehicles), John Lee and IIS (completing work despite receiving full compensation), Caputo (refusing to pursue civil and criminal charges against Locastro), and the Haenzes, Lee, IIS, Caputo, Meyers, All Pro Auto Mall, Issac, Angel's, and Green (preventing Plaintiff from having finances at his disposal hindering Plaintiff from writing checks for legal process). In addition, Plaintiff asserts violations of generic Fifth Amendment rights for various other conduct, including: (1) giving false statements to and misleading the authorities; (2) preparing false financial statements; placing illegal tracking devices on Plaintiff's vehicles. None of this conduct implicates a violation of Plaintiff's rights under the Due Process clause or any other clause of the Fifth Amendment.[30] As Plaintiff's Fifth Amendment due process claims are asserted against only private individuals and do not allege any involvement by federal

---

[29] As a threshold matter, the due process clause of the Fifth Amendment applies only to actions taken by the federal government and not by private persons. *Local 1498, Am. Fed'n of Gov't Employees*, 522 F.2d at 492 (citing *Public Utility Comm'n v. Pollak*, 343 U.S. 451, 461 (1952)). *See also Velez-Diaz v. Bega-Irizarry*, 421 F.3d 71, 78-79 (1st Cir. 2005); *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993).

[30] Besides the Takings Clause and Due Process Clause, the Fifth Amendment affords individuals the right to: (1) indictment by grand jury for capital/infamous crimes, (2) not be subjected to double jeopardy, and (3) not to incriminate oneself, U.S. CONST. amend. V, cl. 1-3, none of which are implicated here.

authorities, these claims fail as a matter of law. Accordingly, the Court recommends these claims be dismissed with prejudice.

Plaintiff asserts claims under the Sixth Amendment against Michael Hill (helping Locastro get rid of vehicles); Lee and IIS (violating antitrust laws); Attorney Defendants and Caputo for stalling Plaintiff in filing this lawsuit), and Ellis (speaking to persons he was told not to speak to). None of these Defendants is alleged to have been interacting with federal authorities in engaging in the acts giving rise to Plaintiff's claims, and therefore, were not acting under color of federal law. Accordingly, Plaintiff's Sixth Amendment claims fail as a matter of law and should be dismissed with prejudice.

In addition, Plaintiff's claim for relief under the Ninth Amendment is legally insufficient. The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. IX. As the district court aptly explained in *Basile v. Elizabethtown Area School District*:

> [T]he Ninth Amendment does not confer substantive rights in addition to those conferred by other portions of our governing law, and does not independently secure a constitutional right for purposes of pursuing a civil rights claim. *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir.1986); *Quilici v. Village of Morton Grove*, 695 F.2d 261, 271 (7th Cir.1982); *U.S. v. LeBeau*, 985 F.2d 563, 1993 WL 21970 (7th Cir.1993)). Rather, the Ninth Amendment serves to protect fundamental rights that are not set forth in the Constitution. *Charles v. Brown*, 495 F.Supp. 862, 863 (N.D.Ala.1980); *see also Gibson v. Matthews*, 926 F.2d 532 (6th Cir.1991).

*Basile v. Elizabethtown Area Sch. Dist.,* 61 F. Supp. 2d 392, 403 (E.D.Pa. 1999). *See also Perry v. Lackawanna Cnty. Children & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009) ("the Ninth Amendment does not independently provide a source of individual constitutional rights" (citing *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007); *Schowengerdt v. United States,* 944 F.2d

483, 490 (9th Cir. 1991)); *Kachmar v. City of Pottsville,* No. 4:05CV413, 2005 WL 2591871, at *6 n. 5 (M.D.Pa. Oct. 13, 2005) ("The construction of the Ninth Amendment and its plain language reveal that it provides positive affirmation to the existence of rights which are not enumerated but which are nonetheless protected by other provisions." (citing *The Federalist No. 84* (Modern Library ed.1937); *Griswold v. Connecticut*, 318 U.S. 479 (1965)).

Here Plaintiff asserts only that Locastro, a private individual acting alone, violated his rights under the Ninth Amendment by writing false financial statements for Plaintiff's business, Highest Galaxy. This claim does not implicate the violation of a fundamental right that would fall within the rights reserved to the people by the Ninth Amendment, such as the right to personal privacy. *See e.g., Roe v. Wade,* 410 U.S. 113, 152-53 (collecting cases) (noting various contexts in which Supreme Court has recognized a right of personal privacy or a guarantee of certain zones of privacy under the Constitution, such as activities relating to marriage, procreation, contraception, family relationships, and child rearing and education; and holding that right to privacy is broad enough to include woman's right to decide whether or not to terminate her pregnancy); *Griswold v. Connecticut*, 381 U.S. 479, 488 (1965) (Goldberg, J., concurring) (noting that "liberty" guaranteed by the due process clause of the Fourteenth Amendment ""denotes not merely freedom from bodily restraint but also (for example), the right . . . to marry, establish a home and bring up children . . .."" (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923))).[31]

Moreover, Plaintiff seeks relief from a private individual. The Ninth Amendment only protects Plaintiff from *government* infringement of fundamental rights not otherwise protected

---

[31] In *Griswold,* the Supreme Court held that a state law banning the use of contraceptives unconstitutionally intruded upon the fundamental personal right to marital privacy. 381 U.S. at 485-86.

under the Constitution, not *private* infringement. *Griswold,* 381 U.S. at 488 ("The language and history of the Ninth Amendment reveal that the Framers of the Constitution believed that there are additional fundamental rights, protected from government infringement, which exist alongside those fundamental rights specifically mentioned in the first eight amendments."). Accordingly, the Court finds Plaintiff's Ninth Amendment claim against Locastro is legally deficient, and therefore, recommends dismissal of this claim with prejudice.

Therefore, because all of the alleged violations of the First, Fourth, Fifth, Sixth, Eighth and Ninth Amendments require that the alleged violations be committed by persons acting under color of federal law, and it is clear that none of the Defendants meets that requirement, the Court recommends that Plaintiff's claims against the Defendants for violations of the First, Fourth, Fifth, Sixth, Eighth, and Ninth Amendments be dismissed with prejudice.

2.      **Claims Under Sections 1981 & 1982**

Plaintiff asserts that this civil action is authorized by 42 U.S.C. §§ 1981 and 1982. Section 1981 provides as follows:

> 1981.  Equal rights under the law
>
> (a)      Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

43

> (c) Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. §1981. A claim under Section 1981 is restricted by its language to discrimination based on race or color. *Springer v. Seaman*, 821 F.2d 871, 880 (1st Cir. 1987) (racial animus is necessary element of claim under § 1981), *abrogated on other grounds in Jett V. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). Accordingly, to state a claim under 42 U.S.C. § 1981, a plaintiff is required to plead facts demonstrating that the plaintiff is member of a racial minority, that there was intent to discriminate on the basis of race by the defendant, and that discrimination concerned one or more of the activities enumerated in the statute. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Imagineering, Inc. v. Kiewit Pac. Co*, 976 F.2d 1303, 1313 (9th Cir. 1992) (under section 1981, plaintiff must allege facts that would support an inference that defendant intentionally and purposefully discriminated against him), *abrogated on other grounds in Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008); *Hood v. New Jersey Dep't of Civil Serv.*, 680 F.2d 955, 959 (3d Cir. 1982).

Section 1982 establishes the property rights of citizens and provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. §1982. "To establish a cognizable claim under § 1982, a plaintiff 'must allege with specificity facts sufficient to show ... (1) the defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived plaintiff of his [property] rights because of race.'" *Crane v. Cumberland Cnty., Pa.*, 64 F. App'x 838, 841 (3d Cir. 2003) (quoting *Brown v. Philip Morris,* 250 F.3d at 797).

Plaintiff has failed to establish the elements of either a Section 1981 or 1982 claim beyond mere speculation. Indeed, the only mention of Section 1981 and 1982 is on page two of the Complaint under "Jurisdiction and Venue." As such, Plaintiff does not allege which of the enumerated rights under these sections were allegedly violated, which Defendants were involved, and the dates that any violations occurred. Nor does he allege facts to show that any deprivation of the enumerated rights was racially motivated.

It is clear from the Complaint that Plaintiff is a member of a racial minority. However, although he accuses the Haenzes (Brian and Denise) of being racists, and accuses the Haenzes and Locastro of trying to create a civil war among the black community, he does not allege that they intentionally deprived him of one of the enumerated rights under either Section 1981 or 1982 based on his race. The allegation that Plaintiff was indicted while neither Locastro nor the Haenzes were, does not give rise to an equal protection claim under Section 1981 against the Haenzes or Locastro. *See* Discussion, *supra,* at 36. Therefore, these allegations fall way short of establishing a plausible entitlement to relief under Section 1981.

Plaintiff's Section 1982 claim suffers from the same infirmities as his claim under Section 1981—Plaintiff has failed to allege any facts above the mere speculation level to show which of the Defendants intentionally deprived him of a clearly identified property right because he was African American. Thus, Plaintiff has not stated a legally cognizable claim for liability under Section 1982.

In addition, it appears that any potential claims under Sections 1981 or 1982 are likely time-barred. Generally, claims under Section 1981 and 1982 are subject to the statute of limitations for personal injury actions for the state in which the Section 1981 or 1982 claim arises. *Carpenter,* 2005 WL 1364787, at *5 (citing *Boykins v. Lucent Techs., Inc.,* 78 F.Supp. 2d

402, 408 (E.D.Pa. 2000) (§1981); *Mitchell v. Cellone,* 291 F.Supp. 2d 368, 372 (W.D.Pa. 2003)

(§1982) (collecting cases), *rev'd on other grounds,* 389 F.3d 86 (3d Cir. 2004)).    In

Pennsylvania, the statute of limitations for personal injury actions is two years. *Carpenter*, 2005

WL 1364787, *5 (citing *Vitalo,* 399 F.3d at 542).[32]    Thus, any conduct or events occurring prior

to July 31, 2010 cannot form the basis of any Section 1981 or 1982 claim Plaintiff wishes to

pursue.

Plaintiff's allegations indicate that all of his alleged interactions with Locastro ended

sometime in 2008.  Thus, to the extent the Complaint could liberally be construed to state a

Section 1981 or 1982 claim against Locastro, such claims are time-barred.  Likewise, it appears

that Plaintiff's business dealings with the Haenzes occurred between February 2009 and March

2010, and his bare assertion that Haenzes illegal activities continued throughout 2012, without

more, is too speculative to infer any alleged violation of Section 1981 or 1982 after March of

2010.  Thus, to the extent Plaintiff intends to pursue a Section 1981 or 1982 claim against the

Haenzes, such claims are also time-barred.

As a result of the above noted infirmities, any potential claims under Sections 1981 and

1982 fail as a matter of law, and therefore, should be dismissed with prejudice as to all

Defendants. *See Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63 (6th Cir. 1985) (section

1981 claim failed as a matter of law where the plaintiff failed to proffer a prima facie case of

---

[32] The Supreme Court has applied the federal "catch-all" four-year statute of limitations in 28
U.S.C. §1658(a) to Section 1981 claims in the limited circumstance where the alleged conduct
supporting the Section 1981 claim is predicated on the language added  by the 1991 amendment
to Section 1981. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382-83 (2004); *see also Ke
v. Ass'n of Pa. State Coll. & Univ. Faculties,* 447 F. App'x 424, 425-26 (3d Cir. 2011) ("Section
1658(a)'s four-year limitations period does not apply to claims that could have been raised under
the pre-1990 version of §1981."). Here, the factual allegations indicate that Plaintiff's Section
1981 claim can be raised under the pre-1990 version of Section 1981, and thus, the two-year
statute of limitations applies to Plaintiff's Section 1981 claim.

intentional race discrimination); *White v. Florida Highway Patrol,* 928 F. Supp. 1153 (M.D. Fla. 1996) (complaint dismissed due to vague and conclusory allegations).

### 3.    Liability Under Section 2000c-5

Plaintiff also asserts a claim under 42 U.S.C. §2000c-5 to redress rights secured by the Constitution of the United States.  (Am. Compl., ¶1, ECF No. 12 at 3.)    Section 2000c-5 is found in Subchapter IV of Chapter 21, Title 42 of the United States Code, which deals with discrimination in public education, and provides:  "Payments pursuant to a grant or contract under this subchapter may be made (after necessary adjustments on account of previously made overpayments or underpayments) in advance or by way of reimbursement, and in such installments, as the Secretary may determine."  42 U.S.C. §2000c-5.  The facts alleged in the Complaint do not, in any way, implicate a violation of Section 2000c-5 by any of the Defendants.  More importantly, Section 2000c-5 does not authorize a private cause of action to redress the deprivation of any rights, such as those alleged in the Complaint.  Thus, Plaintiff's reliance upon Section 2000c-5 to impose liability is misplaced and completely unfounded. Accordingly, the Court recommends dismissal of this claim as to all Defendants with prejudice.

### 4.    Liability Under Section 1985

Plaintiff further asserts a conspiracy claim, presumably under 42 U.S.C. §1985, against several of the Defendants.    While Plaintiff has not identified which of the three subsections of Section 1985 Defendants have allegedly violated, a liberal construction of his claim yields only a possible violation of Section 1985(3).[33]  Section 1985(3) authorizes a civil action against:

---

[33] The allegations of the Complaint do not implicate a violation of subsection (1) of Section 1985, which provides a remedial action to persons injured from a conspiracy to prevent federal officers from performing their duties, or subsection (2) A remedial action is authorized under Section 1985(2) where a plaintiff alleges and proves a conspiracy:  (1) to intimidate a party, witness, or juror in a federal court proceeding, or (2) to obstruct justice in a state court

> two or more persons . . . [who] conspire or go in disguise
> on the highway or on the premises of another, for the purpose of
> depriving, either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of equal privileges
> and immunities under the laws; or for the purpose of preventing or
> hindering the constituted authorities of any State or Territory from
> giving or securing to all persons within such State or Territory the
> equal protection of the laws; or . . . two or more persons [who]
> conspire to prevent by force, intimidation, or threat, any citizen
> who is lawfully entitled to vote, from giving his support or
> advocacy in a legal manner, toward or in favor of the election of
> any lawfully qualified person as an elector for President or Vice
> President, or as a Member of Congress of the United States; or to
> injure any citizen in person or property on account of such support
> or advocacy; . . .. A private conspiracy is authorized by the first
> and third clauses in Section 1985(3); however, only the first clause,
> commonly referred to as the "deprivation clause," is potentially
> implicated by the allegations in the Complaint.

42 U.S.C. §1985(3).  The provision authorizing a civil remedy for a violation of any of the

subsections of Section 1985 appears at the end of Section 1985(3).[34]  *See Kush v. Rutledge*, 460

U.S. 719, 724 (1983).  This authorization, however, is granted in limited circumstances.  *Brown,*

250 F.3d at 805.

Here, none of the Defendants is alleged to be a state actor or to have acted under color of

state law, and therefore, the second clause of Section 1985(3) is not applicable here.  Of the

---

proceeding.  *Banks v. One or More Unknown Named Confidential Informants of Fed. Prison
Camp Canaan,* Civ. A. No. 1:06-cv-1127, 2008 WL 2563355, at *11 n. 22 (M.D.Pa. June 24,
2008).

[34] The pertinent statutory language provides:

> [I]n any case of conspiracy set forth in this section, if one or more
> persons engaged therein do ... any act in furtherance of the object
> of such conspiracy, whereby another is injured in his person or
> property, ... the party so injured ... may have an action for the
> recovery of damages occasioned by such injury or deprivation
> against any one or more of the conspirators.

42 U.S.C.§1985(3)).

remaining two clauses which apply to private actors, only the first clause, known as the Deprivation Clause, is applicable here. The Deprivation Clause "provides a cause of action against a person who conspires 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Banks v. One or More Unknown Named Confidential Informants of Fed. Prison Camp Canaan,* Civ. A. No. 1:06-cv-1127, 2008 WL 2563355, at *11 n. 22 (M.D.Pa. June 24, 2008) (quoting 42 U.S.C. §1985(3)).

In order to bring a viable claim for a private conspiracy under the deprivation clause of Section 1985(3), a plaintiff must allege and establish four elements: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997) (citing *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828-29 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971)). *See also Welch v. Bd. of Directors of Wildwood Golf Club,* 877 F.Supp. 955, 958 (W.D.Pa. 1995) (citing *Griffin, supra*). An examination of the Complaint reveals a lack of factual allegations from which a plausible claim for a violation of Section 1985(3) can be inferred.

As a threshold matter, Plaintiff must allege an underlying conspiracy to survive dismissal of his Section 1985(3) claim. This entails setting forth in the complaint some factual basis to support the elements of a conspiracy, which are: (1) an actual agreement among the co-conspirators or "'meeting of the minds,'" and (2) concerted action. *Demetro v. Police Dep't, City of Cherry Hill,* 2011 WL 5873063, *16 (D.N.J. Nov. 22, 2011) (citing *Startzell v. City of*

*Philadelphia*, 533 F.3d 183, 205 (3d Cir.2008) (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158 (1970)); *Capogrosso v. The Supreme Court of New Jersey,* 588 F.3d 180, 184-85 (3d Cir. 2009)). *See also Goodson v. Maggi,* 797 F.Supp. 2d 624, 639 (W.D.Pa. 2011) (citations omitted) ("Plaintiff must set forth specific factual allegations that demonstrate collusion or concerted action among the alleged conspirators."). "'Courts have nearly unanimously required more than conclusory allegations of deprivations of constitutional rights'" protected under §1985(3). *Osei v. Temple Univ. of Commw. Sys. of Higher Educ.,* Civ. A. No. 10-2042, 2011 WL 4549609, at *19 (E.D.Pa. Sept. 30, 2011) (quoting *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972)) (also citing *Herring v. Chichester Sch. Dist*., Civ. A. No. 06-5525, 2007 WL 3287400, at * 10 (E.D.Pa. Nov. 6, 2007) (holding plaintiff's § 1985(3) claim must be dismissed because it contained nothing more than conclusory statements that the defendants conspired, without alleging any facts to demonstrate or allow an inference of a conspiracy)). Indeed, simply alleging that "'the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism[]'" is not enough to survive a motion to dismiss. *Novellino v. N.J. Dep't of Corr. Mountainview Youth Corr. Facility*, Civ. No. 10-4542 (AET), 2011 WL 3418201, at *6 (D.N.J. Aug. 3, 2011) (quoting *Prince v. Aiellos,* No. 09-5429, 2010 WL 4025846, at *7 (D.N.J. Oct. 12, 2010) (citing *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D.Pa.1997))).

Thus, although the allegations in a civil rights complaint are not held to a heightened pleading standard, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993), a plaintiff must assert facts showing a conspiracy with some particularity. *Goodson,* 797 F.Supp. 2d at 639 (citing *Bieros v. Nicola,* 860 F.Supp. 223, 225 (E.D.Pa. 1994)). At a minimum, the plaintiff should identify with some particularity the conduct

violating his rights, the time and place of the actions, and the specific individuals involved. *See Osei,* 2011 WL 4549609, at *19 (citations omitted).

In the case at bar, Plaintiff's Complaint fails to allege any facts to support his Section 1985(3) claim, leaving the Court to guess at exactly which Defendants and conduct could give rise to a Section 1985(3) claim. The only allegations involving an alleged racially discriminatory animus are made with respect to the Haenzes and possibly Locastro.[35] But the Complaint does not allege that any facts suggesting that these parties conspired to deprive him of his constitutional rights under Section 1985(3), nor can the Court envision any set of facts that would give rise to a viable Section 1985(3) claim against either the Haenzes or Locastro. Plaintiff does not identify which Defendants were involved in a particular conspiracy, their alleged part in the conspiracy or any actions which would demonstrate an actual agreement to conspire. As previously noted, "[m]ere conclusory allegations that a conspiracy existed will not survive a motion to dismiss." *Boykin v. Bloomsburg Univ. of Pa.*, 893 F.Supp. 409, 418 (M.D.Pa. 1995) (citing *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)), *aff'd without op.,* 91 F.3d 122 (3d Cir. 1996).

Plaintiff also fails to allege exactly when the conspiracy took place. Only conduct occurring on or after July 31, 2010 can support a conspiracy under Section 1985. *Bougher v. Univ. of Pittsburgh,* 882 F.2d 74, 79-80 (3d Cir. 1989) (holding that Pennsylvania's two-year statute of limitations applies to Section 1985 claims and begins to run from the date of each overt act causing damage to plaintiff). Thus, to the extent Plaintiff's conspiracy claim under Section 1985 is predicated upon acts occurring prior to July 31, 2010, his claim is time-barred.

---

[35] Although Plaintiff's Complaint appears to suggest that the Haenzes (Caucasians) possessed a race-based discriminatory animus towards Plaintiff (African American) and African Americans generally, and that Locastro tried to create a civil war in the black community, it nonetheless fails to satisfy the threshold element of a Section 1985(3) claim.

Likewise, to the extent Plaintiff intended to assert his conspiracy claim against the Attorney Defendants under Section 1985(3), that claim also fails because he has failed to allege any facts to show (1) the elements of a conspiracy claim, and (2) that the objective of any alleged conspiracy by the Attorney Defendants was racially motivated to deprive him of equal protection under the law.

Moreover, Plaintiff has not asserted that the aim of any alleged conspiracy was to interfere with a right protected against private encroachment by Section 1985. Our jurisprudence makes clear that Section 1985(3) does not create substantive rights but merely serves as a conduit for vindicating federal rights and privileges which have been defined elsewhere. *Brown,* 250 F.3d at 805 (citing *Novotny*, 442 U.S. at 376). "[I]n the context of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under §1985(3): the right to be free from involuntary servitude and the right to interstate travel." *Id.* (citing *Bray*, 506 U.S. at 278; *Caswell v. The Morning Call, Inc*., No. Civ. A. 95-7081, 1996 WL 560355, at *6 (E.D.Pa. Sept.30, 1996); *Welch,* 877 F.Supp. at 959 (citing *Bray, supra*)). In concluding that the right to abortion was not a right protected from private encroachment under Section 1985(3), the Supreme Court explained:

> Whereas, unlike the right of interstate travel, the asserted right to abortion was assuredly "aimed at" by the petitioners, deprivation of that federal right (whatever its contours) cannot be the object of a purely private conspiracy. In *Carpenters*, we rejected a claim that an alleged private conspiracy to infringe First Amendment rights violated § 1985(3). The statute does not apply, we said, to private conspiracies that are "aimed at a right that is by definition a right only against state interference," but applies only to such conspiracies as are "aimed at interfering with rights ... protected against private, as well as official, encroachment." 463 U.S., at 833, 103 S.Ct., at 3358. There are few such rights (we have hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude, *United States v. Kozminski*, 487 U.S. 931, 942, 108 S.Ct. 2751, 2759, 101 L.Ed.2d 788 (1988), and,

in the same Thirteenth Amendment context, the right of interstate travel, *see United States v. Guest*, 383 U.S., at 759, n. 17, 86 S.Ct., at 1179, n. 17). The right to abortion is not among them. It would be most peculiar to accord it that preferred position, since it is much less explicitly protected by the Constitution than, for example, the right of free speech rejected for such status in *Carpenters*. Moreover, the right to abortion has been described in our opinions as one element of a more general right of privacy, *see Roe v. Wade*, 410 U.S. 113, 152-153, 93 S.Ct. 705, 726-727, 35 L.Ed.2d 147 (1973), or of Fourteenth Amendment liberty, *see Planned Parenthood of Southeastern Pa.*, 505 U.S., at 846-851, 112 S.Ct., at 2804-2807; and the other elements of those more general rights are obviously *not* protected against private infringement. (A burglar does not violate the Fourth Amendment, for example, nor does a mugger violate the Fourteenth.) Respondents' § 1985(3) "deprivation" claim must fail, then, because they have identified no right protected against private action that has been the object of the alleged conspiracy.

*Bray,* 506 U.S. at 278 (emphasis in original).

As in *Bray,* the allegations in the Complaint here fail to identify or implicate a right protected against private action that has been the object of any alleged conspiracy. There is nothing in the Complaint to suggest that the aim of any conspiracy was to deprive Plaintiff of his right to interstate travel or to be free from involuntary servitude. Rather, Plaintiff alleges as to the Haenzes that African Americans were unjustly targeted for criminal prosecution and set up by Caucasians with the federal authorities while the "snitches" who were engaged in illegal conduct were not indicted, and that the Haenzes and Locastro tried to create a civil war in the black community. As to the Attorney Defendants, Plaintiff alleges that they all discouraged him from and stalled him in bringing this lawsuit. Neither of these allegations suggests that the aim of the conspiracy was to deprive him of a constitutional right protected against private encroachment.

Accordingly, Plaintiff has failed to plead a plausible conspiracy claim under Section 1985(3). Accordingly, the Court recommends that Plaintiff's Section 1985(3) claim be dismissed with prejudice.

### 5.    State Law Claims/Supplemental Jurisdiction

In addition to the numerous federal claims discussed above, Plaintiff has asserted the following state law claims in his Complaint:    (1) civil conspiracy, (2) "posing malpractice actions", (3) breach of contract, (4) extortion, (5) animal cruelty, (6) breaking and entering, (7) burglary, and (8) defamation.  As there are no federal claims remaining in this case, the Court declines to exercise supplemental jurisdiction over these state claims and any other unidentified state law claims asserted in the Complaint. *See* 28 U.S.C. §1367(c)(3). Therefore, the Court recommends that the state claims be dismissed without prejudice.[36]

### D.    LEAVE TO AMEND THE COMPLAINT

This Court recognizes that the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint—regardless of whether the plaintiff requests to do so—when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile.  *See Day v. Florida,* 563 F. App'x 878, 881 (3d Cir. 2014) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)); *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir.2008) (citing *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004)).

The Court recommends that Plaintiff should not be given leave to amend his Complaint. The Court finds that Plaintiff's claims under 42 U.S.C. §§1981, 1982, 1983, 1985, and 2000c-5, and his constitutional claims for alleged violations of the First, Fourth, Fifth, Sixth, Eighth,

---

[36] Plaintiff may be able to bring some or all of his state law claims in the appropriate Court of Common Pleas.

Ninth, and Fourteenth Amendments fail as a matter of law, and therefore, it would be futile to allow Plaintiff leave to amend these claims.

### E. CONCLUSION

For the reasons set forth above, it is respectfully recommended that this civil rights action, which was commenced *in forma pauperis*, be dismissed under 28 U.S.C. §1915(e)(2)(B), as both frivolous and for failure to state a claim upon which relief may be granted. Specifically, it is recommended that Plaintiff's claims under 42 U.S.C. §§1981, 1982, 1983, 1985, and 2000c-5, and his constitutional claims for alleged violations of the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments be **dismissed with prejudice**.

It is further recommended that all of Plaintiff's state law claims be **dismissed without prejudice** so that he may pursue those claims in the appropriate Court of Common Pleas if he so desires.

Finally, in light of the above recommendations, it is further recommended that Plaintiff's Motion for Service by U.S. Marshal of the Complaint (ECF No. 11) be **denied as moot**.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, Plaintiff is allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated:   December 11, 2014

BY THE COURT:

LISA PUPO LENIHAN
U.S. Magistrate Judge

cc:   Robert Russell Spence, Jr., *Pro Se*
      #31366068
      Northeast Ohio Correctional Center
      2240 Hubbard Road

Youngstown, OH  44505
*Via First Class U.S. Mail*